**Karl A. MILES**

v.

**GROVE MANUFACTURING COMPANY.**

**Civ. A. No. 82–0156–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

April 22, 1982.

Thomas W. Williamson, Jr., Emanuel Emroch and Associates, Richard W. Schaffer, Sands, Anderson, Marks & Miller, Richmond, Va., John C. Shea, Marks, Stokes & Harrison, Hopewell, Va., for plaintiff.

William O. Snead, III, Hall, Surovell, Jackson & Colten, Fairfax, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

Karl A. Miles, plaintiff herein, filed his action on 2 March 1982 against Grove Manufacturing Company, a Pennsylvania corporation. The action is based upon diversity of citizenship. The matter involves product liability, plaintiff claiming he was injured as a result of a defective hydraulic truck crane manufactured by defendant.

On 12 August 1981 plaintiff had filed an identical action against Grove in the Circuit Court of the City of Richmond, Virginia. In the State court he also had sued a non-diverse codefendant. The State action has proceeded regularly and is set for trial beginning on 16 August 1982.

During the course of discovery in the State case it became desirable for plaintiff to depose two witnesses who reside in Pennsylvania. In the words of a brief filed by plaintiff in this court: "These individuals are prominent citizens of rural southern Pennsylvania. Corporations in which these two individuals have been or are key employees are the largest employers in the area for 20 years." The brief further states that: "Counsel for Miles feared that the State judge, when faced with protestations of two of the more prominent citizens of his community, would be overly deferential to their sentiments and refuse to order their depositions be taken. Filing this action and utilizing the federal subpoena system was the most viable course of action open to Miles." In light of the question thus stated of plaintiff's ability to pursue discovery in his State action, he filed the instant federal suit.

Defendant has moved to stay the federal action pending a resolution of the State court action. The question has been properly briefed and is ripe for decision.

Both parties cite in their briefs and quote from *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This opinion, of course, spoke of the "virtually unflagging obligation" of federal courts to exercise jurisdiction granted them by Congress in the absence of the three traditional abstention grounds. None of the three traditional grounds exists in this case so the argument here centers on the fourth, or *Colorado River* ground for abstention. Surprisingly, neither party cites the Supreme Court's attempt to further develop the principles of a *Colorado River* abstention in the Court's subsequent decision in *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978). While this 4–4–1 decision is, because of the numbers breakdown, difficult to parse, its history on remand reveals, I believe, its and *Colorado River's* true import.

Without going into the factual or procedural history of *Will*, suffice it to say that the district court judge on remand was directed to reconsider his stay of a federal action, pending disposition of a State action, in light of the intervening *Colorado River* decision. In view of the "virtually unflagging" and "exceptional" circumstances language in *Colorado River*, commentators such as Moore's Federal Practice ¶ 0.203[4] and Wright, Miller and Cooper, Federal Practice and Procedure, § 4247 had assumed that, to use the words of Professor Wright, "the proper occasion for use of the fourth abstention doctrine in the future will be much fewer than they have seemed in the past to some lower courts."

Despite these predictions, the district court and the circuit court on remand in *Calvert* found nothing in the language of *Colorado River* to deter the granting of a stay in the pending federal case. Judge Will, in his opinion in *Calvert Fire Insurance Company v. American Mutual Reinsurance Company*, 459 F.Supp. 859 (N.D.Ill. 1978), being his opinion on remand to per-

severe in the granting of a stay, listed four reasons why he believed *Colorado River* does not prohibit the continuation of the stay.

First he pointed out that *Colorado River* actually affirmed the district court's grant of a stay to the reactive federal case [1] in light of the pending State litigation. The stay approved of in *Colorado River* was based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817, 96 S.Ct. at 1246. Judge Will believed that the stay in his case was equally well-bottomed on considerations of judicial resources and comprehensive disposition of litigation as well as on principles of "fairness, efficiency and avoidance of duplicative trials and appeals. . . ." 459 F.Supp. at 863.

Second, he noted the difference between a *dismissal* of the federal litigation and a *stay* of the federal litigation. In granting a stay it was manifest that were undue unfairness to arise in the course of the State litigation, plaintiff would be free to dismiss the State action and on a mere motion and order the federal stay could be lifted.

Third, Judge Will noted, as did the Seventh Circuit, that *Landis v. North American Co.*, 299 U.S. 248, 250, 57 S.Ct. 163, 164, 81 L.Ed. 153 (1936) was pointed to as the guide to be followed in determining the propriety of a stay in State/federal cases despite the fact that *Landis* dealt with a federal/federal situation.

The fourth point depended on by Judge Will was the fact that the State defendant had eschewed its right to a removal; instead it filed a reactive action in the federal court thus circumventing the law applicable to removal cases.

While lamenting the fractured Supreme Court in *Will v. Calvert Fire Insurance Company* as having "introduced uncertainty into the area of the law that we had hoped would be clarified," he acknowledged that a

---

1. A reactive case is one in which the State court defendant sues the State court plaintiff in federal court. A repetitive case is one in which the State court plaintiff sues the State court defendant in federal court.

district court in granting a stay when confronted with duplicative, reactive, and later-filed suits, might well be violating the principles set forth in *Colorado River*. Judge Will called for further clarification. I believe the Seventh Circuit gave that further clarification and it is upon the Seventh Circuit's decision that I primarily rely.

In reviewing Judge Will's reconsideration after *Colorado River*, the Seventh Circuit in *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 600 F.2d 1228 (7th Cir. 1979) concluded that *Colorado River* seemed to set, in dictum, a relatively straight-forward rule to avoid duplicative litigation in the case of one claim asserted in two or more federal district courts. The rule would require the judge considering a motion for a stay to carefully consider all of the facts and circumstances and grant the stay if such would result in a more speedy, efficient and inexpensive disposition of the claim. Generally speaking, the district court before which the claim first was filed would proceed.

The language of *Colorado River* indicates that under the same circumstances, but where the two courts involved are a federal and a State court, a stay would be granted by the federal court only upon "the clearest of justifications." 424 U.S. at 819, 96 S.Ct. at 1247. But the Seventh Circuit went beyond this rubric to determine what guidelines were laid down by the Supreme Court in *Colorado River* as to the nature of the required justifications. The words are empty if not put into context since "clearest" and "extreme" are relative words. Trial courts need further guidance in order to recognize the instances when they should and when they should not grant a stay. The Seventh Circuit's analysis (600 F.2d at 1233–34) showed that the case cited by the Supreme Court as the guide to the exercise of discretion in the State/federal concurrent jurisdiction situation is *Landis v. North*

*American Company*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936).[2] In *Calvert*, 600 F.2d at 1233–34, the Seventh Circuit quoted in part the language at pages 424 U.S. 818–19, 96 S.Ct. at 1246–47 from *Colorado River* and made the observation that the State/federal criteria as actually set forth in *Colorado River* is identical to the federal/federal rule. 600 F.2d at 1233.

The Seventh Circuit in further interpreting *Colorado River* opined, at page 1234, that ". . . the district judge should consider any special factors counseling for or against the exercise of jurisdiction in the case before him." And in summation at page 1235 the Seventh Circuit said:

> In the absence of a legitimate claim to exclusive federal jurisdiction, we see no reason why a federal court should not stay its hand pending termination of a parallel state proceeding, at least where the district judge has found the federal suit to be vexatious.

And, at page 1236:

> A limited power to stay a federal suit until termination of a parallel state suit represents a reasonable accommodation of the conflict between the needs of judicial administration and the obligation of the federal courts to exercise their jurisdiction.

Though decided prior to the Seventh Circuit's *Calvert* decision in 1979, Judge Bua of the Northern District of Illinois reached a similar conclusion in *Burrows v. Sebastian*, 448 F.Supp. 51 (N.D.Ill.1978). Judge Bua quoted at length from pages 424 U.S. 817–18, 96 S.Ct. 1246–47 of *Colorado River* and then explained his own understanding of "exceptional circumstances" as they applied to the case before him—a case virtually on all fours with the case before me from a procedural standpoint.

In opposing defendants' motion plaintiffs argue that no showing of "exceptional

---

**2.** The Supreme Court's reference to *Landis* in *Colorado River* concerning a State/federal situation is as follows:

> No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise juris-

diction and the combination of factors counseling against that exercise is required. *See Landis v. North American Co., supra*, 299 U.S. at 254–255, 57 S.Ct. at 165–166. . . .
424 U.S. at 818–19, 96 S.Ct. at 1246–47.

circumstances" sufficient to justify non-exercise of this Court's jurisdiction has been made. This argument, however, reflects what is in this Court's judgment, a fundamental misconception of *Colorado River* and the principles stated therein. There is an essential difference between a case like *Colorado River* and that present. *Colorado River* involved a "reactive" suit, in essence, a second suit in which the roles of the parties in a prior action concerning the same issues are reversed . . . . .

The present situation, however, involves a "repetitive" rather than a "reactive" suit; both the state and parallel federal actions have been brought by the same plaintiffs. In such a situation, the federal court, by staying its proceedings pending the disposition *or voluntary dismissal* of the state court action, simply places the plaintiff in the position of having to decide in which of the two forums to pursue his claims. Any talk of a "duty" on the part of the federal courts to exercise the jurisdiction with which they are vested is meaningful only in reference to a party to whom this duty is owed and who possesses a correlative right.

Where an order of stay or dismissal in no way infringes on a plaintiffs' right to have his claims adjudicated in federal court it cannot be said that there has been any abrogation, justified or otherwise, of the Court's "duty" to exercise its jurisdiction. Hence, such an order does not require "exceptional circumstances" in order to be warranted. In essence, the situation here is like that where there are pending two similar or parallel actions in different federal districts. As the quoted passage from *Colorado River* clearly recognizes, the absence of the "duty" issue in such a situation makes for a much more liberal granting of stays or dismissals in order to "avoid duplicative litigation." 448 F.Supp. at 53–54

Judge Bua then analyzed the situation before him under this "less demanding standard" and determined that a stay of the federal proceeding pending a determination by the plaintiff as to whether he would proceed in State court or in federal court was justified. Judge Bua was not oblivious to the fact that "*Colorado River* reflects perhaps a major shift in emphasis away from more liberal policies in granting stays or dismissals in State-federal concurrent jurisdiction situations." But he concluded on the above reasoning, that *Colorado River* "did not change the law with regard to [parallel, repetitive, concurrent jurisdiction cases]". 448 F.Supp. at 54.

This Court, guided by the interpretations of *Colorado River* contained in the Supreme Court's plurality opinion in *Will*, the Seventh Circuit's decision on remand in *Calvert*, the district court's decision after remand in *Calvert*, and Judge Bua's opinion in *Burrows*, will consider the pending motion for a stay in the instant case.

As in *Burrows*, plaintiff here had an initial opportunity to proceed in federal court but chose instead to proceed in State court. Moreover, the plaintiff is a citizen of Virginia. While 28 U.S.C. § 1332, by its language, permits a Virginia citizen to bring his action in a federal forum in his native State on the grounds of diversity, the reason for the statute and the spirit of the statute are not in the least bit transgressed when such a diversity action is stayed in the federal forum.

No federal question is involved here. The case involves the application of Virginia tort law to a products liability case. As compared to federal judges, State judges are expert in such field and State juries are as fully capable as federal juries to decide the fact questions.

With respect to the convenience of the parties, the two courts involved sit within five blocks of one another here in Richmond so they are equally convenient to the parties and witnesses.

The relief which can be granted in the State court is more comprehensive than the relief that can be granted here since there is a non-diverse co-defendant in the State action while only the diverse defendant is before the federal court.

While proceeding in both courts at the same time would not avoid piecemeal litigation, it certainly could result in inconsistent rulings on pretrial motions and in any event would have two judges working on the same or similar problems with the lawyers duplicating their work and the clients footing unnecessary and nonproductive litigation bills.

With respect to the order of filing, the State action was commenced well in advance of the federal action and if the present schedule is met the trial will have been completed before the end of August next. No trial date has even been selected in the federal action. It is clear that the State action is being actively litigated and the parties have experienced no delay.

The suit there cannot properly be characterized as precautionary or filed for technical reasons only. To the contrary, the federal suit is the precautionary action filed for technical reasons only. Anticipating a biased judge in the State courts of Pennsylvania, where plaintiff's right to depose two key witnesses would be enforced, plaintiff as a precautionary measure and in order to have the supposed superiority of federal discovery mechanics, filed the instant suit. Thus the federal proceeding has more of the nature of a bill of discovery than it does a bona fide effort to reach a disposition of the dispute through litigation.

Finally, to permit the action to remain pending would, to a certain extent at least, give credence to the unsupported (and, I am certain, unsupportable) claim made by plaintiff that the judges of rural Pennsylvania make rulings on the basis of fear or favor and that they respect persons above the law. There are venal judges just as there are venal litigants and lawyers. But before I would conclude that a judge, a litigant, or a lawyer is disreputable, I would require something substantially more than the supposition and innuendo advanced by plaintiff in his brief.

For the foregoing reasons, this action is STAYED from the entry hereof to 31 August 1982. Unless the stay is sooner vacated on appropriate motion, the action will stand dismissed on 31 August 1982.

And it is so ORDERED.